CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

MAY 2 3 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

KENNETH W. HAMSHAR,      )     CASE NO. 3:06CV00052
                )
      Plaintiff,      )
                )
v.               )     REPORT AND RECOMMENDATION
                )
MICHAEL J. ASTRUE, Commissioner   )     By:    B. Waugh Crigler
of Social Security[1],      )          U. S. Magistrate Judge
                )
      Defendant.     )

This challenge to a final decision of the Commissioner which denied plaintiff's August 13,

2004 claim for a period of disability and disability insurance benefits under the Social Security Act

(Act), as amended, 42 U.S.C. §§ 416 and 423, is before this court under authority of 28 U.S.C. §

636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings,

conclusions and recommendations for the disposition of the case. The questions presented are

whether the Commissioner's final decision is supported by substantial evidence, or whether there

is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow,

the court will RECOMMEND that an Order enter REMANDING the case to the Commissioner for

further proceedings in accordance with Sentence 4 of 42 U.S.C. § 405(g).

In a decision eventually adopted as a final decision of the Commissioner, an Administrative

Law Judge (Law Judge) found that plaintiff, who was nearly fifty-six years old with a high school

education and at least twelve credits at a community college at the time of the decision, had not

engaged in substantial gainful activity since May 27, 2004, his alleged disability onset date, and

---

[1]On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. In
accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, he should be substituted for
JoAnne B. Barnhart as the defendant.

was insured for benefits through December 31, 2009. (R. 23-25, 68, 79, 90, 623.) The Law Judge further found that plaintiff has the following severe impairments: cervical spine injury, carpal tunnel syndrome, degenerative disc disease of the back, neck and arms, diminished visual capacity and depression. (R. 25-29.)[2] The Law Judge concluded that these impairments were not severe enough to meet or equal any listed impairment. (R. 29.) The Law Judge was of the view that plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged; however, his statements concerning the intensity, duration, and limiting effects of these symptoms were "not entirely credible." (R. 31.) The Law Judge determined that plaintiff retained the residual functional capacity to perform sedentary work with the ability to perform repetitive work activities without constant supervision that involves limited reaching overhead, no crawling or climbing ladders, ropes or scaffolds, and rarely crouching/squatting or climbing stairs or ramps. (R. 30.) Having assessed plaintiff's evidence concerning his past relevant work as scheduler/planner, and having considered evidence adduced by a Vocational Expert (VE) in response to hypothetical questions relating to his past work as described in the national economy and as performed by the plaintiff, the Law Judge determined that he could perform his past relevant work. (R. 32.) Accordingly, he found plaintiff not disabled at the fourth level of the sequential evaluation. *See* 20 C.F.R. § 404.1520. (R. 32-33.)

Plaintiff appealed the Law Judge's decision to the Appeals Council, during which plaintiff submitted additional evidence. The Council found no basis in the additional evidence or in the record to review the Law Judge's decision. (R. 8-10.) Accordingly, the Appeals Council denied

---

[2]While the Law Judge also found plaintiff suffered asthma, he did not find it to be severe. (R. 25.)

2

review and adopted the Law Judge's decision as the final decision of the Commissioner. This action ensued.

Summarized, plaintiff contends in his Memorandum In Support of Motion For Summary Judgment ("Pl's. Memorandum"): 1) that the Law Judge did not properly evaluate the medical evidence; 2) that he failed to give controlling weight to the opinions of physical and mental treating sources and adopted a residual functional capacity not supported by the substantial medical; 3) that he failed to properly credit evidence compelling a finding that plaintiff could not perform his past relevant work, and finally; 4) that he failed to posit questions to the VE containing all plaintiff's limitations of record. At the heart of these contentions is plaintiff's belief that the regulations and Social Security Ruling ("SSR") mandate controlling weight be given to treating source opinions, such as those of David Mika, M.D., Dana Blackmer, Ph.D., Debra Giorgi-Guariere, J.D./M.D., relating to plaintiff's mental status and those of Jennifer Sargent, M.D. and Rasheed Siddiqui, M.D. relating to plaintiff's physical impairments. Plaintiff offers that their opinions amply are supported by the clinical evidence, and that the evidence supplied by State agency review doctors was insufficient to countervail that of his treating and other examining physicians. 20 C.F.R. § 404.1527 (D)(1) and SSR 96-5p. (Pl's Memorandum at 17.)

Defendant takes issue with plaintiff, and, in his Brief in Support of Defendant's Motion for Summary Judgment ("Def.'s Brief") offers that there was no failure to apply appropriate legal standards, and that his final decision is supported by the substantial medical and lay evidence. While acknowledging the plaintiff suffers severe mental and physical impairments, the Commissioner contends that plaintiff simply failed to discharge his burden in the sequential evaluation to show he is unable to perform his past relevant work.

3

The Commissioner believes the Law Judge had a right to rely on the opinion of a reviewing psychologist, Mary Ellen Cronin, Ph.D., and that substantial evidence supports the Law Judge's determination giving more credit to her opinion than to those of plaintiff's treating psychiatrist, David Mika, M.D., a consultative examining psychiatrist, Debra Giorgi-Guarnieri, M.D. and a consultative examining psychologist Dana Blackmer, Ph.D. (Def.'s Brief at 9-12.) The Commissioner is of the view that Dr. Mika's assessments were not explained, and that those of the consultative examiners either were countervailed by plaintiff's daily activities or were based only on his "self-report of his symptoms." (Def.'s Brief at 11-12.)

The Commissioner also contends that the VE considered all the limitations found by the Law Judge on plaintiff's ability to perform his past relevant work, both in the national economy and as specifically performed by plaintiff. The Commissioner points out that, even when more restrictive limitations were made part of the hypothetical questioning by the Law Judge, the VE opined that plaintiff's specific past jobs of scheduler and planner were available to a person with such limitations.

While plaintiff does not make much of the Appeals Council's rather laconic denial of review after the submission of additional evidence on administrative appeal, the Commissioner takes the position that the evidence offered the Appeals Council did not support a finding that he was disabled, either from his past work or altogether. The Commissioner believes that this evidence actually demonstrated plaintiff had been engaged in levels of activity requiring lifting and generally was ' "doing quite well." ' (Def.'s Brief at 13 citing a May 8, 2006 report from plaintiff's

4

treating doctor, Rasheed Siddiqui, M.D. (R. 590-591.)).[3] Again, the Commissioner contends that his final decision is supported by substantial evidence.

In his written response to the Commissioner's brief, plaintiff disputes the Commissioner's characterization of the treating source evidence as well as his conclusion that his pain is controlled by medication. Plaintiff argues that, if his pain were as severe as he has related to his doctors and to the administration, and as severe as his take on the opinions of his treating and consulting doctors, he would be disabled not only from his past work, but also from all gainful activity. In addition, plaintiff believes the Commissioner has misstated the evidence relied on to support his final decision, particularly that offered by Dr. Cronin, the state agency consultative reviewer. Plaintiff points out that the consultative reviewer simply checked boxes on a form indicating the degree to which he was limited and, then, acknowledged consistencies between her views and those of Dr. Mika. Moreover, plaintiff argues that Dr. Cronin's report is internally inconsistent in that, at one point, she indicates lower levels of function which conflict at another with findings of higher levels. (R. 159-165.)

The evidence in the record shows that plaintiff's entire work experience was as a scheduler inputting work into a printing process for LexisNexus. (R. 607.) Half, or over half, of his shift was spent sitting, with the balance involving walking between offices or equipment "to see how things were progressing." (R. 608.) Most of his work "was on the computer," retrieving information from data bases and processing information onto spreadsheets. (*Id.*)

According to plaintiff's testimony, he suffers the effects of nystagmas, an eye condition

---

[3]The Commissioner refers to the report as dated May 18, 2006, but its actual date is May 8, 2006.

5

which requires him to turn his neck at odd angles to see. (R. 610.) As a consequence, he developed neck pain and other neurological symptoms. Though first treated with medication, plaintiff eventually underwent a foraminotomy at C6-C7. Post-surgical tests revealed essentially no changes at C7, but mild degenerative and disco-osteophytic disease with a mildly bulging disc were present at C6. (See e.g. R.268-269.) Nevertheless, the record abundantly establishes that he has been under the consistent care for neck and arm pain by Dr. Siddiqui of the Charlottesville Pain Management Center from 2004 to the present (R. 141-148, 395-403, 581-592), has been seen and treated by the University of Virginia, Department of Orthopaedic Surgery (R. 455-505), and has undergone a consistent regime of physical therapy at Spectrum Therapy (R. 139-140, 486-555).

There also is no dispute, and the Law Judge found, that plaintiff suffered severe carpal tunnel syndrome for which the record shows there have been release procedures (R.135-138), and he has suffered severe depression. A substantial number of office notes from plaintiff's treating psychiatrist, Dr. Mika, were submitted, but as the Law Judge noted, most are difficult, if not impossible, to decipher. (R. 167-196, 404-406.) Dr. Mika submitted an assessment of plaintiff's mental limitations on March 3, 2006 which revealed mainly moderate, but some marked limitations on his concentration and attention, and no limitations on plaintiff's ability to have social interaction, understand or remember. (R. 408-409.) No explanation for these assessments was provided apart from Dr. Mika's office notes.

On April 6, 2006, Dana Blackmer, Ph.D., submitted a report of a psychological examination. (R. 410-416.) In summary, she concluded that plaintiff suffered major depression with psychotic features, a dysthymic disorder, a panic disorder without agoraphobia, post-traumatic stress, alcohol abuse and pedophilia, in remission. (R. 415.) She noted that plaintiff was

6

preoccupied with his physical functioning and recommended medication and supportive treatment. (*Id.*) Nevertheless, her prognosis was guarded. (*Id.*)

On April 24, 2006, a psychiatrist, Deborah Giorgi-Guarnieri, M.D., submitted an extensive report of an examination and review of plaintiff's medical and psychiatric history she performed on March 3, 2006. (R. 418-441.) She essentially confirmed Dr. Blackmer's Axis I diagnoses while expanding a bit on her Axis II, or physical, diagnoses. (R. 438-439.) This examiner believed that plaintiff was being treated properly by Dr. Mika, his treating psychiatrist. Where asked to assess his functional limitations, she revealed that plaintiff's "self-reported depression and anxiety" were consistent with that found by the examining psychologist, and that his feeling of being an outcast, his worsening feeling about himself due to sexual dysfunction and his belief he was disabled were "sincere." (R. 438.)

The State agency review psychiatrist, Mary Ellen Cronin, M.D., completed forms for a Psychiatric Review Technique and assessment of plaintiff's Mental Residual Functional Capacity on April 19, 2005. (R.149-165.) This was nearly a year **before** the psychological and psychiatric examinations described above and the functional assessment by Dr. Mika.[4] The only evidence in the record relating to plaintiff's mental status at that time consisted of Dr. Mika's hard-to-decipher notes. She concluded that plaintiff suffered affective and anxiety-related disorders with no "C" criteria evidence. (R. 149, 160.) In her view, plaintiff suffered no "marked" limitations and mainly moderate to no limitations in most areas impacting vocational function. (R. 162-163.) In a written explanation, Dr. Cronin found plaintiff's statements about his impairments to be "partially

---

[4] A state agency Psychiatric Review technique was conducted on July 29, 2005 by A. John Kalil, Ph.D. (R. 376-388.) It is rather laconic and provides essentially no explanation for the conclusions set forth therein.

7

credible," and she revealed that her functional assessment was "partially consistent" with the assessment of Dr. Mika. (R. 164-165.) Ultimately, she was of the view that plaintiff was "able to meet the basis mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments." (R. 165.)

The State agency also directed a record review of plaintiff's physical impairments. (R. 367-375.) According to this reviewing physician, plaintiff was able to: a) lift up to 10 pounds frequently and 20 pounds occasionally; b) stand/walk/sit about 6 hours in an 8-hour day; and c) was able to push/pull without limitation other than those on weight. (R. 368.) The report revealed no postural, manipulative, vision, communicative or environmental limitations. (R. 369-371.)

The court is required to uphold the Commissioner final decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. *Craig v. Chater*, 76 F.3d 171, 176 (4th Cir. 2001). The Commissioner is charged with evaluating the medical evidence, assessing symptoms, signs and findings to determine the functional capacity of the claimant. 20 C.F.R. §§404.1527-404.1545. The regulations grant latitude to the Commissioner in resolving conflicts or inconsistencies in the medical evidence, and whether a claimant is disabled is a question for the Commissioner and not one reserved to any one or more medical sources. 20 C.F.R. §404.1527(e)(2).

Greater and, under some circumstances, controlling weight is to be assigned to treating source evidence because such sources ordinarily have a longitudinal view of a claimant's medical history. 20 C.F.R. § 404.1527(d)(2). Nevertheless, a Law Judge may evaluate the evidence of State agency review consultants whose evidence may be found to countervail that of treating sources provided the Law Judge explains in his/her decision the weight given to non-treating, non-

8

examining record consultants. 20 C.F.R. §404.1527(f)(2)(ii). Where a claimant suffers an impairment which is likely to produce the symptoms claimed, including disabling pain, the Law Judge may look to all the evidence in the record, including the claimant's work history and daily activities in determining the extent the claimant's symptoms limit his/her capacity to perform work-related activities. 20 C.F.R. §§ 404.1529(c)(1) and (c)(2).

In determining plaintiff's functional capacity, the Law Judge first adopted and gave controlling weight to the State agency assessments to the exclusion of plaintiff's treating and examining medical evidence which followed the State agency assessments by almost a year. The Law Judge then framed his examination of the VE based on these functional findings which led to the conclusion that plaintiff could perform his past relevant work.

A Law Judge's regulatory responsibility to evaluate the medical evidence as provided in 20 C.R.F. §§ 404-1527-404.1529 and to make a determination of the plaintiff's functional capacity based in whole or part on State agency reviews, is not unconstrained. This is so particularly where, as here, the State agency medical assessments which provided the very basis for his determination of functional capacity were not informed by later acquired, highly relevant later acquired treating and examining medical evidence which could have affected the medical assessment of the record reviewer had that evidence been extant at the time the record evidence was assessed. Thus, in order to implement the State agency assessment in any dispositive way, the Law Judge was thrust into the position of having to exercise a medical judgment about the more recent medical evidence which the State agency reviewer was designed to do in the first instance. In other words, to reach his conclusions about plaintiff's functional capacity, the Law Judge exercised an expertise he did not have, and in light of the fact the Appeals Council laconically denied review, it cannot be said

9

that the Commissioner remedied this error.

In the end, it is the view of the undersigned that there has been an inadequate adjudication of the claim, thus making it impossible for a reviewing court to determine on this record whether the final decision finding plaintiff able to perform his past relevant work is supported or not by the substantial evidence. Good cause has been shown to remand the case for further proceedings in which the Commissioner should be directed that, in the event he is unable to grant benefits on the current record, supplemental evidentiary proceedings are to be conducted to fully assess the medical evidence at which both sides should be entitled to introduce additional evidence.

It is RECOMMENDED that an order enter REMANDING the case for further proceedings under Sentence 4 of 42 U.S.C. § 405(g) with the directions offered above.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED:

U.S. Magistrate Judge

5-23-07

Date

10